UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TORIA ANDERSON and WENDY MEDINA,
*individually, and on behalf of others similarly
situated*,                                                    Case No.

            Plaintiffs,

vs.

CREVE COEUR URGENT CARE LLC,
DOWNTOWN URGENT CARE LLC,
EUREKA CLINIC LLC, NORTH CITY
URGENT CARE LLC, UCSL LLC, *doing
business as* "St. Louis St. Louis Urgent Cares,"
and SONNY SAGGAR,

            Defendants.

---

## COLLECTIVE AND CLASS ACTION
## COMPLAINT WITH JURY DEMAND

Plaintiffs, Toria Anderson and Wendy Medina, individually and on behalf of all others

similarly situated, by and through their attorneys JTB Law Group LLC and Engelmeyer &

Pezzani, LLC, hereby bring this Collective and Class Action Complaint against Defendants

Creve Coeur Urgent Care LLC, Downtown Urgent Care LLC, Eureka Clinic LLC, North City

Urgent Care LLC, UCSL LLC, doing business as "St. Louis St. Louis Urgent Cares," and Sonny

Saggar, and state as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and

Fed. R. Civ. P. 23 by Plaintiffs, Toria Anderson and Wendy Medina (hereinafter referred to as

"Plaintiffs"), individually and on behalf of all similarly situated persons employed by

Defendants, Creve Coeur Urgent Care LLC, Downtown Urgent Care LLC, Eureka Clinic LLC,

North City Urgent Care LLC, UCSL LLC, doing business as "St. Louis St. Louis Urgent Cares,"

and Sonny Saggar, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500, *et seq.* ("MMWL").

2.      At all relevant times, St. Louis Urgent Cares has provided direct emergency medical care at 4 facilities in the greater St. Louis, Missouri area. St. Louis Urgent Cares' central office is located at 916 Olive Street, Downtown St. Louis, Missouri 63101.

3.      Dr. Sonny Saggar, named as an individual Defendant, is St. Louis Urgent Cares' founder, medical director, and the principal officer of each corporate Defendant.

4.      At all relevant times, St. Louis Urgent Cares has employed a staff of hourly-paid, non-exempt Medical Assistants who administer routine medical tests and procedures and enter medical information into Defendants' charts and databases.

5.      Plaintiffs Toria Anderson and Wendy Medina worked as Medical Assistants at each of Defendants' facilities and regularly worked over 40 hours per week.

6.      The FLSA provides in relevant part: "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *see also* 29 U.S.C. § 207(e) ("[T]he 'regular rate' at which an employee is employed shall be deemed to include *all remuneration* for employment paid to, or on behalf of, the employee….") (emphasis added).

7.      The MMWL likewise requires that employee who works over 40 hours in a week "receive[] compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Mo. Rev. Stat. § 290.505(1). The Missouri Legislature has provided that the MMWL "shall be interpreted in

accordance with the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq*., as amended, and the Portal to Portal Act, 29 U.S.C. Section 251, *et seq*., as amended, and any regulations promulgated thereunder." Mo. Rev. Stat. § 290.505(4)

8.      As Medical Assistants, Plaintiffs and other similarly situated employees were victims of Defendants' common unlawful policies in violation of the FLSA and MMWL, including:

    a.   Failing to pay Medical Assistants for time spent working after clocking out, including entering medical information into Defendants' charts and databases;

    b.   Paying Medical Assistants overtime compensation at a rate less than 1.5 their regular rate, as a result of calculating their regular rate without factoring in pay for weekend shifts that in many weeks was paid at a rate "less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days." 29 U.S.C. § 207(e)(6); *see also* 29 CFR § 778.203 ("If the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in determining the employee's regular rate of pay and cannot be credited toward statutory overtime due….").

9.      As a result, there were many hours in excess of 40 in a workweek for which Medical Assistants including Plaintiffs did not receive overtime pay calculated at 1.5 their regular rate of pay, in violation of the FLSA and MMWL.

10.      In addition, Defendants agreed to pay Medical Assistants an hourly rate greater than their base rate for working weekend shifts, but breached this agreement by failing to pay the promised additional rate for many weekend shifts worked by Plaintiffs and other Medical Assistants.

11.      Plaintiffs bring this collective and class action pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated hourly Medical Assistants employed by Defendants in the applicable time period, and seek declaratory relief and unpaid minimum wages and overtime, liquidated damages, fees and

costs, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

13.     The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

14.     This Court has personal jurisdiction over each corporate Defendant because they all operate from the same principal business office, which is located in the State of Missouri.

15.     The Court has personal jurisdiction over Defendant Sonny Saggar because at all relevant times he has been a resident of the State of Missouri.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District, employ Medical Assistants in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

**Plaintiffs**

17.     Plaintiff Toria Anderson is a resident of St. Louis County, Missouri, and was employed by Defendants as a Medical Assistant from approximately March 2013 to May 2016. Plaintiff Anderson signed a consent form to join this lawsuit, which is attached as ***Exhibit 1***.

18.     Plaintiff Wendy Medina is a resident of St. Louis County, Missouri, and was employed by Defendants as a Medical Assistant from approximately March 2012 to May 2016. Plaintiff Medina signed a consent form to join this lawsuit, which is attached as ***Exhibit 2***.

**Defendants**

19.     Defendant Creve Coeur Urgent Care LLC is a limited liability company

organized under the laws of Missouri.

20.    Defendant Creve Coeur Urgent Care LLC was the entity that appeared on Plaintiffs' paystubs for work they performed at Defendants' facility located at 13035 Olive Boulevard, St. Louis, Missouri 63141, which Defendants refer to as "Creve Coeur Urgent Care."

21.    Defendant Creve Coeur Urgent Care LLC conducts business as "St. Louis Urgent Cares."

22.    Defendant Creve Coeur Urgent Care LLC's principal business office is located at 916 Olive Street, St. Louis, Missouri 63101.

23.    Defendant Creve Coeur Urgent Care LLC's principal corporate officer is Sonny Saggar.

24.    Defendant Downtown Urgent Care LLC is a limited liability company organized under the laws of Missouri.

25.    Defendant Downtown Urgent Care LLC was the entity that appeared on Plaintiffs' paystubs for work they performed at Defendants' facility located at 916 Olive Street, St. Louis, Missouri 63101, which Defendants refer to as "Downtown Urgent Care."

26.    Defendant Downtown Urgent Care LLC conducts business as "St. Louis Urgent Cares."

27.    Defendant Downtown Urgent Care LLC's principal business office is located at 916 Olive Street, St. Louis, Missouri 63101.

28.    Defendant Downtown Urgent Care LLC's principal corporate officer is Sonny Saggar.

29.    Defendant Eureka Clinic LLC is a limited liability company organized under the laws of Missouri.

30.    Defendant Eureka Clinic LLC was the entity that appeared on Plaintiffs' paystubs

5

for work they performed at Defendants' facility located 623 W 5th St., Eureka, Missouri 63025-1110.

31.     Defendant Eureka Clinic LLC conducts business as "St. Louis Urgent Cares."

32.     Defendant Eureka Clinic LLC's principal business office is located at 916 Olive Street, St. Louis, Missouri 63101.

33.     Defendant Eureka Clinic LLC's principal corporate officer is Sonny Saggar.

34.     Defendant North City Urgent Care LLC is a limited liability company organized under the laws of Missouri.

35.     Defendant North City Urgent Care LLC was the entity that appeared on Plaintiffs' paystubs for work they performed at Defendants' facility located 6113 Ridge Avenue, Saint Louis, Missouri 63133, which Defendants refer to as "North City Urgent Care."

36.     Defendant North City Urgent Care LLC conducts business as "St. Louis Urgent Cares."

37.     Defendant North City Urgent Care LLC's principal business office is located at 916 Olive Street, St. Louis, Missouri 63101.

38.     Defendant North City Urgent Care LLC's principal corporate officer is Sonny Saggar.

39.     Defendant UCSL LLC is a limited liability company organized under the laws of Missouri.

40.     Defendant UCSL LLC was occasionally the entity that appeared on Plaintiffs' paystubs.

41.     Defendant UCSL LLC does business as "St. Louis Urgent Cares."

42.     Defendant UCSL LLC's principal business office is located at 916 Olive Street, St. Louis, Missouri 63101.

6

43.     Defendant UCSL LLC's principal corporate officer is Sonny Saggar.

44.     Defendant Sonny Saggar is an adult resident of the State of Missouri.

45.     At all relevant times, Sonny Saggar has been the Medical Director of St. Louis Urgent Cares.

## GENERAL ALLEGATIONS

### FLSA Coverage

46.     The FLSA applies in this case on an enterprise basis.

47.     Defendants' annual revenue exceeds $500,000.

48.     At all relevant times Defendants have had more than two employees working on goods that were produced for and that moved in interstate commerce, such as medical supplies and equipment.

### Defendants are Employers

49.     At all relevant times, all Defendants have operated as a single integrated enterprise and have jointly employed Plaintiffs and other Medical Assistants.

50.     At all relevant times, Defendants have engaged in related activities and have had interrelated operations, common management, centralized control of labor relations, and common ownership and financial control.

51.     Defendants all do business as "St. Louis Urgent Cares."

52.     At all relevant times, all Defendants have been owned by Sonny Saggar.

53.     At all relevant times, all Defendants have been managed by Sonny Saggar.

54.     At all relevant times, all Defendants' principal business office has been located at 916 Olive Street, St. Louis, Missouri 63101.

55.     At all relevant times, Sonny Saggar has worked out of Defendants' office located at 916 Olive Street, St. Louis, Missouri 63101.

56.     At all relevant times, Sonny Saggar has engaged in direct patient care and has supervised and interacted with Plaintiffs and other Medical Assistants on a day-to-day basis.

57.     Within the applicable period, Sonny Saggar established a single set of operating policies and procedures to provide direct emergency medical care at each of Defendants' medical facilities.

58.     At all relevant times, Sonny Saggar established single human resources office and a single set of employment policies to hire, train, schedule, supervise, discipline, and pay its Medical Assistants in connection with work performed at each of Defendants' medical facilities.

59.     At all relevant times, Sonny Saggar personally selected various companies to serve as third-party payroll providers with respect to Medical Assistants at Defendants' facilities.

60.     At all relevant times, all four of Defendants' medical facilities used a single system of charts and databases to store information about each patient's visits to each facility, which Plaintiffs and other Medical Assistants were responsible for entering.

61.     At all relevant times, Defendants have had an arrangement whereby Medical Assistants including Plaintiffs were shared and exchanged between Defendants' medical facilities located at each of Defendants' medical facilities.

62.     At all relevant times, Sonny Saggar has exercised control over the work performed by Medical Assistants at each of Defendants' medical facilities.

63.     At all relevant times, Sonny Saggar has had the authority to hire and fire Medical Assistants that have worked at each of Defendants' medical facilities.

64.     In approximately March 2013, Sonny Saggar observed Plaintiff Anderson in the course of her training for a position as a Medical Assistant with Defendants, and based on his positive evaluation of her performance, Defendants continued to employ Plaintiff Anderson,

65.     At all relevant times, Sonny Saggar has determined Medical Assistants' duties,

8

pay, and schedules with respect to work performed at each of Defendants' medical facilities.

66.     At all relevant times, Sonny Saggar has exercised control over the employment records of Plaintiffs and other Medical Assistants.

67.     After requesting that Defendants' third-party payroll provider send her payroll records, Plaintiff Anderson was told that her payroll records could only be sent to her with the approval of Sonny Saggar.

68.     In approximately May 2016, Plaintiff Anderson was told that Sonny Saggar had deleted the work e-mail account that she had maintained as an employee of Defendants.

**Plaintiffs' Employment**

69.     Plaintiffs and similarly situated Medical Assistants were responsible for administering routine medical tests and procedures and entering medical information into Defendants' charts and databases.

70.     Plaintiff Toria Anderson was employed by Defendants as a Medical Assistant from approximately March 2013 to May 2016.

71.     As a Medical Assistant, Plaintiff Anderson was required to work shifts as needed at Creve Coeur Urgent Care, Downtown Urgent Care, North City Urgent Care, and Defendants' facility in Eureka, Missouri.

72.     At all relevant times, and irrespective of which medical facility she was working at, Plaintiff Anderson reported to the same supervisors and managers, including Sonny Saggar and Renita Barnes.

73.     At all relevant times, Plaintiff Anderson received bi-weekly paystubs from each corporate Defendants purporting to show her hourly rate of pay for non-overtime, overtime, and weekend hours.

74.     To the extent Plaintiff Anderson's hours worked on the clock at all medical

facilities combined exceeded 40 in a workweek, Defendants paid her overtime compensation at 1.5 times the hourly rate they purported to pay her for non-overtime hours.

75.     When Plaintiff Anderson started working for Defendants her hourly rate was $9.50 per hour.

76.     When Plaintiff Anderson last worked for Defendants her hourly rate was $15 per hour.

77.     Plaintiff Wendy Medina was employed by Defendants as a Medical Assistant from approximately March 2012 to May 2016.

78.     As a Medical Assistant, Plaintiff Medina was required to work shifts as needed at Creve Coeur Urgent Care, Downtown Urgent Care, North City Urgent Care, and Defendants' facility in Eureka, Missouri.

79.     At all relevant times, and irrespective of which medical facility she was working at, Plaintiff Medina reported to the same supervisors and managers, including Sonny Saggar and Renita Barnes.

80.     At all relevant times, Plaintiff Medina received bi-weekly paystubs from each corporate Defendants purporting to show her hourly rate of pay for non-overtime, overtime, and weekend hours.

81.     To the extent Plaintiff Medina's hours worked on the clock at all medical facilities combined exceeded 40 in a workweek, Defendants paid her overtime compensation at 1.5 times the hourly rate they purported to pay her for non-overtime hours.

82.     At all relevant times, Plaintiff Medina's hourly rate was approximately $12-15 per hour.

83.     When Plaintiff Medina last worked for Defendants her hourly rate was $15 per hour.

84.     Defendants instructed Plaintiffs and other Medical Assistants to use Defendants' time-keeping system in order to be paid, or not paid, for their work time.

85.     Defendants promulgated a formal (but ineffectual) policy of paying Plaintiffs and other Medical Assistants for all hours worked, as evidenced by Defendants paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendants' time-keeping system in order to be paid, or not paid, for any time.

86.     Defendants agreed to pay to pay Plaintiffs and other Medical Assistants for all hours worked, as evidenced by Defendants paying them an hourly rate of pay, furnishing employees with paystubs showing their agreed hourly rates, and instructing them to use Defendants' time-keeping system in order to be paid, or not paid, for any time.

**Weekend Pay**

87.     At all relevant times, Defendants maintained a written policy of paying Medical Advisors additional hourly pay for shifts worked during the weekends.

88.     At all relevant times, Defendants and Medical Assistants including Plaintiffs mutually assented to Defendants paying additional hourly rates for shifts worked during the weekends.

89.     Prior to January 2015, Defendants' written policy was to pay Medical Assistants an additional $2 per hour for shifts worked during the weekends.

90.     In January 2015, Defendants sent an e-mail to all Medical Assistants advising that prospectively they would receive an additional $3 per hour for shifts worked during the weekends. (***Exhibit 3***, *Jan. 9, 2015 E-mail from Defendants*.)

91.     At all relevant times, the additional rate Defendants promised to pay for weekend shifts was less than one and one-half times the rate Defendants paid Medical Assistants for like work performed in nonovertime hours on non-weekend days.

11

92.     Defendants failed to pay the promised additional rate for many weekend shifts worked by Plaintiffs and other Medical Assistants.

93.     For example, in the bi-weekly pay period of Monday January 11 – Sunday January 24, 2016, Plaintiff Anderson worked from 9:01 a.m. to 6:49 p.m. on Saturday, January 16, 2016, and from 9:14 a.m. to 5:11 p.m. on Sunday, January 24, 2016, for a total of 17.75 weekend hours, but did not receive an additional $3 for each hour worked on those days. (**Exhibit 4,** *Toria Anderson's Paystub and Time Sheet for the Pay Period Ending January 24, 2016*.)

94.     For example, in the bi-weekly pay period of Monday January 12 – Sunday January 25, 2015, Plaintiff Medina worked from 9:08 a.m. to 5:03 p.m. on Saturday, January 17, 2015, and from 9:14 a.m. to 5:11 p.m. on Saturday, January 24, 2015, for a total of 16.75 weekend hours, but did not receive an additional $3 for each hour worked on those days. (**Exhibit 5,** *Wendy Medina's Paystub and Time Sheet for the Pay Period Ending January 25, 2015*.)

**Unpaid "Off the Clock" Work in Excess of 40 Hours**

95.     Plaintiff Anderson typically worked 5-6 shifts per week.

96.     Plaintiff Anderson's typical shift began at approximately 9:00 – 10:00 a.m. and ended at approximately 6:00 – 7:00 p.m.

97.     Plaintiff Medina typically worked 5-6 shifts per week.

98.     Plaintiff Medina's typical shift began at approximately 7:00 a.m. and ended at approximately 5:00 – 7:00 p.m.

99.     Plaintiffs and similarly situated Medical Assistants regularly worked over 40 hours per week during the applicable time period.

100.     On many workdays, Plaintiffs and similarly situated Medical Assistants spent

approximately 30 minutes to several hours working after clocking out of Defendants' timekeeping system, performing tasks including entering medical information into Defendants' charts and databases.

101.    Because Plaintiffs and similarly situated Medical Assistants performed tasks, including entering medical information into Defendants' charts and databases, after punching out of Defendants' timekeeping system, they were deprived of anywhere from 30 minutes to several hours of compensable working time at the end of many workdays.

102.    In many weeks, Plaintiffs and similarly situated Medical Assistants performed work off the clock, such as entering medical information into Defendants' charts and databases, in excess of 40 hours in a workweek.

103.    For example, in the workweek of Monday February 29 – Sunday March 6, 2016, Plaintiff Anderson worked shifts on each day except for Saturday and Sunday and was paid for a total of 53 hours. (***Exhibit 6,*** *Toria Anderson's Paystub and Time Sheet for the Pay Period Ending March 6, 2016*.) However, in this week Plaintiff Anderson spent additional time after clocking out on tasks including entering medical information into Defendants' charts and databases.

104.    For example, in the workweek of Monday March 16 – Sunday March 22, 2015, Plaintiff Medina worked shifts on each day except for Sunday and was paid for a total of 56.51 hours. (***Exhibit 7,*** *Wendy Medina's Paystub and Time Sheet for the Pay Period Ending March 22, 2015*.)   However, in this week Plaintiff Medina spent additional time after clocking out on tasks including entering medical information into Defendants' charts and databases.

105.    Defendants knew or should have known that Medical Assistants spent time exceeding 40 hours in a workweek performing work after clocking out, including entering medical information into Defendants' charts and databases.

13

106.    At all relevant times, Defendants were able to track the amount of time that Plaintiffs and other Medical Assistants spent in connection with post-shift activities; however, Defendants failed to pay Plaintiffs and other Medical Assistants for such activities.

107.    At all relevant times, Defendants' managers and supervisors were capable of observing Medical Assistants performing work after clocking out.

108.    At all relevant times, Defendants required Medical Assistants to complete a volume of assignments that could not be completed within the time Defendants permitted them to work on the clock each day.

**Overtime Paid at the Incorrect Rate**

109.    To the extent Plaintiffs' or other Medical Assistants' hours worked at all medical facilities combined exceeded 40 in a workweek, Defendants paid them overtime compensation at an incorrect rate.

110.    In many weeks Defendants paid Medical Assistants including Plaintiffs overtime compensation at a rate less than 1.5 their regular rate, as a result of calculating their regular rate without factoring in pay for weekend shifts.

111.    For example, in the bi-weekly pay period of Monday March 21 – Sunday April 3, 2016, Plaintiff Anderson worked on the clock for a total of 4.67 hours in excess of 40 in a workweek, for which Defendants paid her $22.50 per hour. Defendants determined Plaintiff Anderson's overtime rate of $22.50 per hour by multiplying 1.5 times $15 per hour, the rate Defendants paid Plaintiff for 80 hours not in excess of 40 in a workweek. Defendants' calculation of Plaintiff Anderson's regular rate did not include an additional $54 that Defendants paid Plaintiff on account of working 18 weekend hours. (***Exhibit 8,*** *Toria Anderson's Paystub and Time Sheet for the Pay Period Ending April 3, 2016.*)

112.    For example, in the bi-weekly pay period of Monday March 21 – Sunday April

3, 2016, Plaintiff Medina worked on the clock for a total of 8.64 hours in excess of 40 in a workweek, for which Defendants paid her $22.50 per hour. Defendants determined Plaintiff Medina's overtime rate of $22.50 per hour by multiplying 1.5 times $15 per hour, the rate Defendants paid Plaintiff for 70.19 hours not in excess of 40 in a workweek. Defendants' calculation of Plaintiff Medina's regular rate did not include an additional $27.18 that Defendants paid Plaintiff on account of working 9.06 weekend hours.  (***Exhibit 9, Wendy Medina's Paystub for the Pay Period Ending April 3, 2016***.)

**Defendants' Violations of Law are Willful and Ongoing**

113.    Defendants' wrongful acts and/or omissions/commissions, as alleged herein, were not made in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

114.    At all relevant times, Defendants failed to take reasonable steps to determine whether its pay practices were compliant with the FLSA and MMWL.

115.    Defendants' violations of the above-described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable and in bad faith.

116.    Defendants knew that there were weeks, prior to the violations alleged herein, in which Plaintiffs and other Medical Assistants were not paid in compliance with the FLSA and MMWL.

117.    Prior to the violations alleged herein, Defendants agreed to pay unpaid overtime wages to Plaintiffs and other Medical Assistants that they were owed from previous weeks.

118.    Prior to the violations alleged herein, Defendants assured Plaintiffs and other Medical Assistants that they would be paid in compliance with the FLSA and MMWL.

119.     Despite being placed on notice that such time is compensable under the FLSA, Defendants' violations of law have continued unabated.

120.     Plaintiffs complained to Defendants about not receiving overtime compensation but Defendants willfully failed to pay their claimed unpaid wages and has refused to repeal its unlawful pay policies.

## COLLECTIVE ACTION ALLEGATIONS

121.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly customer service Medical Assistants who worked for Defendants at any time during the last three years.*

(hereinafter referred to as the "Collective").   Plaintiffs reserve the right to amend this definition as necessary.

122.     Excluded from the proposed Collective are Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

123.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).   The collective of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

124.     The employment relationships between Defendants and every Collective member are the same and differ only by name, location, and rate of pay. The key issues—the amount of uncompensated pre, mid, and post-shift time owed to each Medical Assistant—do not vary

substantially among the Collective members.

125.    The key legal issues are the same for every Collective member, to wit:

a.      Whether Defendants failed to pay Collective members for time spent working after clocking out, including entering medical information into Defendants' charts and databases;

b.      Whether Defendants paid Collective members overtime compensation at a rate less than 1.5 their regular rate, as a result of calculating their regular rate without factoring in pay for weekend shifts that in many weeks was paid at a rate less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days.

126.    Plaintiffs estimate the Collective, including both current and former employees over the relevant period, will include several hundred members. The precise number of Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

127.    Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly customer service Medical Assistants*
> *who worked for Defendants at any time during the last five years.*

(hereinafter referred to as the "Rule 23 Class").   Plaintiffs reserve the right to amend this definition as necessary.

128.    Excluded from the proposed Rule 23 Class are Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

129.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate that there are at least 40 Rule 23 Class members. Rule 23 Class members should be easy to identify from

Defendants' computer systems and electronic payroll and personnel records.

130.    There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class.   These common legal and factual questions, include, but are not limited to, the following:

a.    Whether Defendants failed to pay Rule 23 Class members for time spent working after clocking out, including entering medical information into Defendants' charts and databases;

b.    Whether Defendants paid Rule 23 Class members overtime compensation at a rate less than 1.5 their regular rate, as a result of calculating their regular rate without factoring in pay for weekend shifts that in many weeks was paid at a rate less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

c.    Whether Defendants are contractually obligated to pay Rule 23 Class members additional hourly pay for shifts worked during the weekends;

d.    Whether Defendants paid Rule 23 Class members additional hourly pay for shifts worked during the weekends;

131.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices.   Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

132.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

133.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits.

134.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

135.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.   *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

136.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

137.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

138.    29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular

rate at which he is employed.

139.   29 U.S.C. § 207 provides, in relevant part:

(e) "Regular rate" defined As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
…
(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

140.   29 CFR § 778.203 provides, in relevant part:

Under section 7(e)(6) and 7(h) of the Act, extra compensation provided by a Premium rate of at least time and one-half which is paid for work on Saturdays, Sundays, holidays, or regular days of rest or on the sixth or seventh day of the workweek (hereinafter referred to as "special days") may be treated as an overtime premium for the purposes of the Act. If the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in determining the employee's regular rate of pay and cannot be credited toward statutory overtime due, unless it qualifies as an overtime premium under section 7(e)(5).

141.   At all times relevant to this action, Defendants were employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

142.   Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

143.   At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

144.   Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

145.    Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

146.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and other Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

147.    Plaintiffs and other Collective Members worked many workweeks in excess of 40 hours within the last three years.

148.    At all times relevant to this action, Defendants failed to pay Plaintiffs and other Collective members for all hours worked in excess of 40 in a workweek, including time spent after clocking out performing work such as entering medical information into Defendants' charts and databases.

149.    In workweeks where Plaintiff and other Class members worked 40 hours or more, the time spent performing post-shift activities should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage, but Plaintiffs and Class Members received no pay for such hours.

150.    In many weeks Defendants paid Medical Assistants overtime compensation at a rate less than 1.5 their regular rate, as a result of calculating their regular rate without factoring in pay for weekend shifts, which at all relevant times was less than one and one-half times the rate Defendants established for like work performed in nonovertime hours on other days.

151.    Defendants' violations of the FLSA were knowing and willful. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

152.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus

an additional equal amount in liquidated damages (double damages), plus costs and reasonable

attorneys' fees.

## COUNT II

### (Rule 23 Class Action)

### VIOLATIONS OF MO. REV. STAT. § 290.500
### FAILURE TO PAY OVERTIME

153.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

154.    Mo. Rev. Stat. § 290.505 provides, in relevant part:

> 1.  No employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
>
> …
>
> 3.  With the exception of employees described in subsection (2), the overtime requirements of subsection (1) shall not apply to employees who are exempt from federal minimum wage or overtime requirements including, but not limited to, the exemptions or hour calculation formulas specified in 29 U.S.C. Sections 207 and 213, and any regulations promulgated thereunder.
>
> 4.  Except as may be otherwise provided under sections 290.500 to 290.530, this section shall be interpreted in accordance with the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq*., as amended, and the Portal to Portal Act, 29 U.S.C. Section 251, *et seq*., as amended, and any regulations promulgated thereunder.

155.    At all times relevant to this action, Defendants were employers under Mo. Rev. Stat.

§ 290.500(4), subject to the provisions of the MMWL.

156.    At all times relevant to this action, Plaintiffs and other Rule 23 Class Members

were "employees" of Defendants within the meaning of Mo. Rev. Stat. § 290.500(3).

157.    Plaintiffs and other Rule 23 Class Members worked many workweeks in excess of

40 hours within the last three years.

158.    At all times relevant to this action, Defendants failed to pay Plaintiffs and other Rule 23 Class Members for all hours worked in excess of 40 in a workweek, including time spent after clocking out performing work such as entering medical information into Defendants' charts and databases.

159.    In workweeks where Plaintiffs and other Rule 23 Class Members worked 40 hours or more, the time spent performing post-shift activities should have been paid at the State mandated rate of 150% of each employee's regularly hourly wage, but Plaintiffs and Rule 23 Class Members received no pay for such hours.

160.    In many weeks Defendants paid Plaintiffs and other Rule 23 Class Members overtime compensation at a rate less than 1.5 their regular rate, as a result of calculating their regular rate without factoring in pay for weekend shifts, which at all relevant times was less than one and one-half times the rate Defendants established for like work performed in nonovertime hours on other days.

161.    Mo. Rev. Stat. § 290.527 provides that as a remedy for a violation of the MMWL, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**Count III**

**(Rule 23 Class Action)**

<u>**BREACH OF CONTRACT**</u>

162.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

163.    At all times relevant to this action, Defendants and Plaintiffs and other Rule 23 Class members had a contractual relationship under which Defendants were obligated to pay

23

Plaintiffs and other Rule 23 Class members for all hours worked, and at additional hourly rates for shifts worked during the weekends.

164.    Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

165.    Plaintiffs and every other Rule 23 Class member performed under the contract by working shifts, including on weekends.

166.    In many weeks, Defendants failed to pay Plaintiffs and other Rule 23 Class members for all hours worked, such as entering medical information into Defendants' charts and databases.

167.    Defendants failed to pay the promised additional rate for many weekend shifts worked by Plaintiffs and other Rule 23 Class members.

168.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for all hours worked and for weekend shifts, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Class.

169.    Plaintiffs' and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., "gap time" claims).

170.    As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

171.    Under Missouri law, the statute of limitations for bringing claims for breach of contract is 5 years. *See* Mo. Rev. Stat. § 516.120.

172.    These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the State of Missouri.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, Toria Anderson and Wendy Medina, request an entry of an

Order the following relief:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II and III);

c.    Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.    Designating Plaintiffs as the representatives of the FLSA collective action Class and the Rule 23 Class and undersigned counsel as Class counsel for the same;

e.    Declaring Defendants willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    Declaring Defendants violated Mo. Rev. Stat. § 290.505 and that said violations were intentional, willfully oppressive, fraudulent and malicious;

g.    Declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Class by failing to pay them for each weekend hour they worked at a pre-established (contractual) regularly hourly rate;

h.    Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the FLSA Collective and Rule 23 Class the full amount of damages and liquidated damages available by law;

i.    Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.    Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k.    Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, Toria Anderson and Wendy Medina, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

By:    ___/s/ Anthony M. Pezzani_____

Anthony M. Pezzani, #52900 MO
Engelmeyer & Pezzani, LLC
13321 N. Outer Forty Road, Suite 300
Chesterfield, MO 63017
(636) 532-9933 Phone
(314) 863-7793 Facsimile
tony@epfirm.com

Jason T. Brown *(will Pro Hac Vice)*
Nicholas Conlon *(will Pro Hac Vice)*
JTB LAW GROUP, L.L.C.
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Attorneys for Plaintiff*