# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| TORIA ANDERSON, et al., individually, and on behalf of others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>CREVE COEUR URGENT CARE LLC, et al.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)        Case No.: 4:16CV2136 HEA<br>)<br>)<br>)<br>)<br>) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment, [Doc. No. 74]. The Motion is opposed by Defendants. For the reasons set forth below, Plaintiffs' Motion is granted.

### Facts and Background

On December 22, 2016, Plaintiffs Toria Anderson ("Anderson") and Wendy Medina ("Medina") (collectively, "Plaintiffs") filed a three-count Complaint alleging that Defendants, their former employers, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (Count I), violated the overtime provisions of the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.505 (Count II), and committed breach of contract (Count III). Since then, Plaintiffs

have seemingly abandoned Count III.  Plaintiffs now seek summary judgment on

Counts I and II for Defendants' failure to pay proper overtime.

Plaintiffs have, in accordance with the Court's Local Rules, submitted a

"Statement of Undisputed Material Facts."  Defendants responded to Plaintiffs'

Statement, admitting some facts and issuing substantively identical denials to the

remainder.  Generally, the denials state:

> This paragraph should be disregarded. Rule 7-4.01 of the Local Rules
> of the United States District Court of Eastern Missouri requires the
> indication of "whether each fact is established by the record, and, if
> so, ***the appropriate citations***." (Emphasis Supplied). The [evidence,
> i.e. deposition testimony and/or exhibits] cited by Plaintiffs does not
> stand for the proposition advanced by Plaintiffs.

Defendants do not elaborate as to why the cited evidence does not stand for the fact

asserted by Plaintiffs.

Plaintiffs argue that Defendants' responses are noncompliant with the

Federal Rules of Civil Procedure because the responses do not "show[] that the

materials cited do not establish the absence or presence of a genuine dispute,"

Fed.R.Civ.P. 56(c)(1)(B), nor "properly address [Plaintiffs'] assertion of fact,"

Fed.R.Civ.P. 56(e).   Plaintiffs also cite Local Rule 7-4.01(E), which states in

pertinent part, "All matters set forth in the statement of the movant shall be deemed

admitted for purposes of summary judgment unless specifically controverted by

the opposing party."

The Court agrees that Defendants' responses denying Plaintiffs' facts do not specifically controvert Plaintiffs' assertions; the generic denials provide  no specific indication as to why Plaintiffs' submitted facts are inaccurate or in dispute. Nevertheless, Defendants claim that they have put forth specific facts showing a genuine dispute for trial.  Assumedly, Defendants are referring to their "Statement of Genuine Material Facts Remaining in Dispute."   Each of Defendants' eight purportedly disputed facts cites to corresponding fact(s) put forth by Plaintiffs, presumably indicating which of Plaintiffs' facts is/are genuinely disputed by Defendants' submission.

The Court, having carefully examined Plaintiffs' "Statement of Undisputed Material Facts" and Defendants' "Statement of Genuine Material Facts Remaining in Dispute," finds that none of the facts submitted by Defendants are in dispute with Plaintiffs' facts.  For example, Defendants' paragraph 5 states that "Plaintiff Medina never talked to Dr. Saggar about not being compensated at the proper rate," but none of Plaintiffs' facts state anything to the contrary.  The same is true of the other seven facts put forth by Defendants – they simply do not controvert Plaintiffs' facts.

Because Defendants have failed to controvert Plaintiffs' Undisputed Material Facts either by specific denial or by raising facts that genuinely dispute them, Plaintiffs' facts are deemed admitted for the purposes of this motion.

[3]

Fed.R.Civ.P. 56 (e); Local Rule 7-4.01(E).  Accordingly, the following facts are undisputed:

Defendants Creve Coeur Urgent Care LLC, Downtown Urgent Care LLC, Eureka Clinic LLC, North City Urgent Care LLC, UCSL LLC (collectively, the "Urgent Cares") jointly operate urgent care facilities marketed under the name "STLHealthWorks," although the Eureka Clinic closed in 2016.  The Urgent Cares share a common business purpose, are under common management and control, and share employees' services.  The Urgent Cares are covered employers for FLSA purposes.

The Urgent Cares are owned by the Saggar Family Trust dated September 4, 2013, a Missouri trust.  Defendant Sonny Saggar ("Saggar") and his wife are the sole trustees of the Saggar Family Trust.  Saggar is the founder and managing member of each of the Urgent Cares.  He exercises operational and managerial control over each of the Urgent Cares and provides direct patient care as a physician.

Plaintiffs were formerly employed by the Urgent Cares.  Plaintiffs received an hourly rate of pay from the Urgent Cares ("Base Rate"), and a premium hourly rate for shifts worked on weekends.  The premium hourly rate for weekend shifts was less than one and one-half (1.5) times the Base Rate paid to each Plaintiff, respectively.  To the extent an employee's hours worked for all of the Urgent Cares

[4]

combined exceeded 40 hours in a workweek, The Urgent Cares paid overtime compensation. For some weeks, the hourly rate Plaintiffs received for these overtime hours was less than 1.5 times their "regular rate" as defined by the FLSA, as discussed in more detail below.

Saggar was directly involved in and has ultimate authority over the hiring, firing, and pay rates of the medical assistants at the Urgent Cares. He personally supervised the other members of the Urgent Cares' management teams and supervised the medical assistants in a clinical capacity.

The Urgent Cares and Saggar (collectively "Defendants") relied on third-party companies to process their employee payroll. The decision to use a third-party company was made by Saggar and an accountant. Defendants took no independent steps to ensure that Plaintiffs were being paid in accordance with state and federal wage-and-hour laws. Prior to the commencement of this action, Defendants did not seek or rely on any advice from legal counsel regarding their compliance with state and federal wage-and-hour laws.

## Legal Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007);

*see* Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id.*  "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law."  *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted).  The moving party has the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted).  Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks and citation omitted).

   To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'"  *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)).  The nonmoving party may not merely point to unsupported self-serving allegations, but

must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7 (8th Cir. 2007).

## Discussion

Plaintiffs seek summary judgment on their FLSA and MMWL claims. Plaintiffs address three issues in their motion: that Defendants violated the FLSA and MMWL, that they are entitled to liquidated damages, and that Saggar is individually liable.

*Defendants violated the FLSA and MMWL*[1]

The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207(a)(1). "Overtime rate" is defined as "a rate not less than one and one-half times the regular rate at which [an employee] is employed." *Id*. An employee's "regular rate" is defined by the FLSA as including "all remuneration for employment paid to, or on behalf of, the employee . . ." 29 U.S.C. § 207(e). "Premium rate[s] paid for work by the employee on Saturdays,

---

[1] The MMWL is interpreted in accordance with the FLSA and the regulations promulgated thereunder; the following discussion applies fully to both the FLSA and MMWL claims. Mo. Rev. Stat. § 290.505(4); *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 757 n.3 (Mo. banc 2014).

Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek," are included in the regular rate, unless "such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days."  29 U.S.C. § 207(e)(6).

"The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.  In this case, Plaintiffs were paid a Base Rate for non-premium, non-overtime work, plus an extra "Shift Differential" on top of their Base Rate for work on Saturdays and Sundays.  In each of the weeks for which evidentiary hour and pay records were introduced by Plaintiffs, this Shift Differential was $3/hour.  Defendants do not dispute that the Plaintiffs' weekend Shift Differentials are not statutorily excluded under the FLSA.  The Department of Labor Wage and Hour Division ("DOL WHD") has provided specific guidance on how to calculate overtime rates for employees who are paid a shift differential.  *See* FACT SHEET #54 – THE HEALTH CARE INDUSTRY AND CALCULATING OVERTIME PAY (rev. July 2009), *available at* https://www.dol.gov/whd/regs/compliance/whdfs54.htm (accessed September 22, 2019) ("Fact Sheet #54").  The "Single Shift Differential" example provided in

Fact Sheet #54 applies to Plaintiffs' situation.[2]  In essence, overtime rates are

determined by summing all base pay and shift differentials to which the employee

is entitled in the given week absent overtime considerations.  That number is then

divided by the total hours the employee worked in the given week to find the

employee's "regular rate" for that week.  The regular rate is then multiplied by 1.5

to obtain the employee's "overtime rate" for the given week.

In their Complaint and Statement of Undisputed Facts, each Plaintiff has

alleged three, two-week pay periods in which she claims she was paid less than the

FLSA-required overtime rate in one or both workweeks.  For each workweek,

Plaintiffs have calculated their regular rate and overtime rate, and argue that their

---

[2] The following, taken directly from Fact Sheet #54, illustrates the DOL WHD calculation that applies in Plaintiffs' situation.  For more detail, see Fact Sheet #54:

> Employers also must include shift differential pay when determining an employee's regular rate of pay. See Regulations 29 CFR 778.207(b). The following examples provide guidance on how to calculate overtime for employees who receive shift differential pay.
>
> ***Example: Single Shift Differential***
>
> A personal care assistant at an assisted living facility is paid $8 an hour and overtime on the basis of the 40 hour workweek system. She works three eight-hour day shifts at $8 an hour and three eight-hour evening shifts. The assistant is paid $1 shift differential for each hour worked on the evening shift. How much should she be paid for her eight hours of overtime?
>
> The additional half-time must be computed based on the regular rate of pay. The regular rate is defined as the total remuneration divided by the total hours worked. The assistant earned a total of $408 for the 48 hours that she worked ($8 an hour times 24 hours plus $9 an hour times 24 hours). Her regular rate equaled $8.50 and her half-time premium is $4.25. Her total earnings for the 8 hours of overtime are $102.

actual overtime compensation was deficient.  Defendants provide no evidence or argument in support of their weak contention that Plaintiffs' payroll "records at best are inconclusive."  Therefore, the Court is left to verify that Plaintiffs' calculations comport with the law.

The Court has concluded that Plaintiffs accurately calculated both their regular rates and overtime rates for each workweek.  However, Plaintiffs compare the amount of overtime pay to which they were entitled to the amount they were paid under the label of "overtime" on their pay stubs. In some cases, though, the Base Rate used to calculate non-overtime pay on the paystubs is higher than the undisputed Base Rate and the FLSA "regular rate" to which Plaintiffs were entitled.  Therefore, absent specific evidence to the contrary, the Court cannot say that the labels on Plaintiffs' paystubs are sufficient to show an FLSA violation. Rather, the determination can be made by comparing Plaintiffs' actual gross remuneration to their gross FLSA required pay as calculated in Fact Sheet #54, given their regular rate, overtime rate, and hours worked.

For the June 29 – July 12, 2015 pay period, Plaintiff Anderson received $1,569.61[3] total gross pay from Defendants.  Her undisputed Base Rate for this period was $12 per hour, with a $3 per hour weekend Shift Differential.  Based on the hours she worked, Anderson was entitled to gross pay of $1,533.32 for the two-

---

[3] Reflects multiple paystubs: Eureka Clinic LLC: $413.00 + Downtown Urgent Care LLC: $961.61 + Creve Coeur Urgent Care LLC: $97.08 + North City Urgent Care LLC: $97.92

week period.[4]  Because her actual gross pay received exceeded the minimum gross pay to which she was entitled, Plaintiffs have not shown an FLSA overtime violation for Anderson's June 29 – July 12, 2015 pay period.

For the December 14 – 27, 2015 pay period, Anderson received $1,475.79 total gross pay from Defendants.  Her undisputed Base Rate for this period was $15 per hour, with a $3 per hour weekend Shift Differential.  Based on the hours she worked, Anderson was entitled to gross pay of $1,477.18 for the two-week period.[5]  Because her actual gross pay received was less than the minimum gross pay to which she was entitled, Plaintiffs have shown an FLSA overtime violation for Anderson's December 14 – 27, 2015 pay period.

---

[4]

| Plaintiff | Toria Anderson | | | | |
|-----------|----------------|---|---|---|---|
| Pay Period | 6/29/15 – 7/12/15 | | | | |
| Minimum gross pay due calculation: | | | | | |
| | Week 1 | | Week 2 | | |
| Regular Rate × 40 hours | $13.18 × 40 | = $ 527.20 | $12.87 × 40 | = $ 514.80 | Minimum Gross Pay Due |
| Overtime Rate × OT hours | $19.77 × 4.18 | = $ 82.64 | $19.31 × 22.2 | = $ 428.68 | |
| Weekly gross | | $ 609.84 | | $ 943.48 | $  1,553.32 |

[5]

| Plaintiff | Toria Anderson | | | | |
|-----------|----------------|---|---|---|---|
| Pay Period | 12/14/15 – 12/27/15 | | | | |
| Minimum gross pay due calculation: | | | | | |
| | Week 1 | | Week 2 | | |
| Regular Rate × 40 hours | $15.00 × 40 | = $ 600.00 | $15.64 × 40 | = $ 625.60 | Minimum Gross Pay Due |
| Overtime Rate × OT hours | $22.50 × 6.26 | = $ 140.85 | $23.46 × 4.72 | = $ 110.73 | |
| Weekly gross | | $ 740.85 | | $ 736.33 | $  1,477.18 |

For the March 21 – April 3, 2016 pay period, Anderson received $1,359.33 total gross pay from Defendants.  Her undisputed Base Rate for this period was $15 per hour, with a $3 per hour weekend Shift Differential.  Based on the hours she worked, Anderson was entitled to gross pay of $1,360.96 for the two-week period.[6]  Because her actual gross pay received was less than the minimum gross pay to which she was entitled, Plaintiffs have shown an FLSA overtime violation for Anderson's March 21 – April 3, 2016 pay period.

For the February 23 – March 8, 2015 pay period, Plaintiff Medina received $1,616.16[7] total gross pay from Defendants.  Her undisputed Base Rate for this period was $12.40 per hour, with a $3 per hour weekend Shift Differential.  Based on the hours she worked, Medina was entitled to gross pay of $1,610.31 for the two-week period.[8]  Because her actual gross pay received exceeded the minimum

---

[6]

| Plaintiff | Toria Anderson | | | | |
|---|---|---|---|---|---|
| Pay Period | 3/21/16 – 4/3/16 | | | | |
| Minimum gross pay due calculation: | | | | | |
| | Week 1 | | Week 2 | | |
| Regular Rate × 40 hours | $15.62 × 40 | = $ 624.80 | $15.66 × 40 | = $ 626.40 | Minimum Gross Pay Due |
| Overtime Rate × OT hours | $23.43 × 2.82 | = $ 66.07 | $23.49 × 1.86 | = $ 43.69 | |
| Weekly gross | | $ 690.87 | | $ 670.09 | $  1,360.96 |

[7] Reflects multiple paystubs: Downtown Urgent Care LLC: $1,004.90 + Creve Coeur Urgent Care LLC: $258.42 + North City Urgent Care LLC: $352.84

[8]

| Plaintiff | Wendy Medina |
|---|---|
| Pay Period | 2/23/15 – 3/8/15 |
| Minimum gross pay due calculation: | |

gross pay to which she was entitled, Plaintiffs have not shown an FLSA overtime violation for Medina's February 23 – March 8, 2015 pay period.

For the April 6 – 19, 2015 pay period, Medina received $1,467.39[9] total gross pay from Defendants.  Her undisputed Base Rate for this period was $13 per hour, with a $3 per hour weekend Shift Differential.  Based on the hours she worked, Medina was entitled to gross pay of $1,485.65 for the two-week period.[10] Because her actual gross pay received was less than the minimum gross pay to which she was entitled, Plaintiffs have shown an FLSA overtime violation for Medina's April 6 – 19, 2015 pay period.

For the April 4 – 17, 2016 pay period, Medina received $1,534.52 total gross pay from Defendants.  Her undisputed Base Rate for this period was $15 per hour,

| | Week 1 | | Week 2 | | |
|---|---|---|---|---|---|
| Regular Rate × 40 hours | $12.87 × 40 | = $ 514.80 | $12.86 × 40 | = $ 514.40 | Minimum Gross Pay Due |
| Overtime Rate × OT hours | $19.31 × 14.15 | = $ 273.24 | $19.29 × 15.96 | = $ 307.87 | |
| Weekly gross | | $ 788.04 | | $ 822.27 | $  1,610.31 |

[9] Reflects multiple paystubs: Eureka Clinic LLC: $250.07 + Downtown Urgent Care LLC: $784.80 + Creve Coeur Urgent Care LLC: $127.60 + North City Urgent Care LLC: $304.92

[10]

| Plaintiff | Wendy Medina | | | | |
|---|---|---|---|---|---|
| Pay Period | 4/6/15 – 4/19/15 | | | | |
| Minimum gross pay due calculation: | | | | | |
| | Week 1 | | Week 2 | | |
| Regular Rate × 40 hours | $13.49 × 40 | = $ 539.60 | $14.16 × 40 | = $ 566.40 | Minimum Gross Pay Due |
| Overtime Rate × OT hours | $20.24 × 7.34 | = $ 148.56 | $21.24 × 10.88 | = $ 231.09 | |
| Weekly gross | | $ 688.16 | | $ 797.49 | $  1,485.65 |

with a $3 per hour weekend Shift Differential.  Based on the hours she worked, Medina was entitled to gross pay of $1,562.68 for the two-week period.[11]  Because her actual gross pay received was less than the minimum gross pay to which she was entitled, Plaintiffs have shown an FLSA overtime violation for Medina's April 4 – 17, 2016 pay period.

Plaintiffs have met their burden of showing that they are entitled to summary judgment on the issue of FLSA and MMWL violations.  Defendants have failed to come forward with specific facts showing a genuine dispute for trial.  Judgment on the issue of FLSA and MMWL violations will be granted in Plaintiffs' favor.

*Plaintiffs are entitled to liquidated damages*

Next, Plaintiffs seek summary judgment on the issue of liquidated damages. "Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The award of liquidated damages is not considered

---

[11]

| Plaintiff | Wendy Medina | | | | |
|-----------|--------------|--|--|--|--|
| Pay Period | 4/4/16 – 4/17/16 | | | | |
| Minimum gross pay due calculation: | | | | | |
| | Week 1 | | Week 2 | | |
| Regular Rate × 40 hours | $15.43 × 40 | = $ 617.20 | $15.65 × 40 | = $ 626.00 | Minimum Gross Pay Due |
| Overtime Rate × OT hours | $23.15 × 13.03 | = $ 301.64 | $23.48 × 0.76 | = $ 17.84 | |
| Weekly gross | | $ 918.84 | | $ 643.84 | $ 1,562.68 |

punitive but is "intended in part to compensate employees for the delay in payment of wages owed under the FLSA." *Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir.1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).   "An award of liquidated damages under section 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Jarrett v. ERC Props., Inc.,* 211 F.3d 1078, 1084 (8th Cir.2000); *Braswell v. City of El Dorado, Ark.,* 187 F.3d 954, 957 (8th Cir.1999) (citing *Hultgren,* 913 F.2d at 508–09); *see also Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir.1987) ("the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are mandatory absent a showing of good faith."); *see also* 29 U.S.C. § 260.

To avoid an award of liquidated damages, the employer bears the burden of establishing, by "plain and substantial" evidence, both subjective good faith and objective reasonableness. *See Chao v. Barbeque Ventures, L.L.C.*, 547 F.3d 938, 941–942 (8th Cir.2008) (*quoting Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir.1999)).   That burden "is a difficult one, with double damages being the norm and single damages, the exception." *Chao*, 547 F.3d at 941–942 (citations and quotations omitted).

To establish subjective good faith, an employer is required to establish "an honest intention to ascertain and follow the dictates of the FLSA." *Gustafson v. Full Serv. Maint. Corp.*, No. 4:11CV00443 AGF, 2012 WL 2117768, at *2 (E.D. Mo. June 11, 2012) (quoting *Chao,* 547 F.3d at 942) (internal quotations and citations omitted).

> An employer must show that it "took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Ahle* [*v. Veracity Research Co.*], 738 F.Supp.2d [896,] 920 (internal quotation omitted). The absence of evidence indicating a knowing or willful violation of the FLSA is not by itself enough to support a finding of good faith." *See Martin* [*v. Cooper Elec. Supply Co.*]*,* 940 F.2d [896,] 909. In addition, a showing that an employer "did not intentionally violate the Act" falls short of satisfying the objective component of the good faith requirement. *Williams v. Tri–County Growers,* 747 F.2d 121, 129 (3d Cir.1984).

*Gustafson*, 2012 WL 2117768, at *2.  Lack of knowledge, lack of willfulness, lack of employee complaints about overtime pay, and delegation of payroll functions to a third-party do not demonstrate an employer's "good faith" under the FLSA. *Chao*, 547 F.3d at 942-43.

"To avoid a liquidated damages award ... the employer must also prove its position was objectively reasonable." *Id.* at 941–42 (quoting *Hultgren*, 913 F.2d at 509). "The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. Ignorance alone will not exonerate the employer." *Id.* at 942.  The court need not reach the issue of reasonableness when an employer cannot demonstrate good faith.  *Id.* at 943.

Defendants have not raised or argued good faith as a defense, whether in their Answer or their opposition to the motion for summary judgment. Defendants' opposition includes only the statement that "It was Defendants' policy to pay overtime at the rate of 1.5." This bare assertion is in no way sufficient to satisfy Defendants' burden of establishing both subjective good faith and objective reasonableness by plain and substantial evidence. At best, this statement evidences a lack of knowledge or willfulness, neither of which demonstrates good faith.

Plaintiffs are entitled to liquidated damages on their FLSA claims.

*Sonny Saggar is individually liable*

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee ..." 29 U.S.C. § 203(d). A "person" can be "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). There may be multiple simultaneous employers under the FLSA, and recovery for FLSA violations is possible against all defendants found to be "employers." *Rikard v. U.S. Auto Protections, LLC*, 4:11CV1580 JCH, 2013 WL 5298460, at * 3 (E.D.Mo. Sept. 20, 2013) (citing *Perez–Benites Candy Brand, LLC*, 2011 WL 1978414, at *5, 6 (W.D.Ark. May 20, 2011)).

"A determination of whether an individual is an employer within the meaning of the FLSA is not governed by formalistic labels or a common law

notion of the employment relationship." *Rikard*, 2013 WL 5298460 at * 3 (citing

*Perez–Benites,* 2011 WL 1978414, at *8; *Donovan v. Sabine Irrigation Co.,* 695

F.2d 190, 194 (5th Cir. 1983)).  "Rather, the focus is on the totality of the

circumstances of whether the individual in question is sufficiently involved in the

day-to-day operations of the corporation." *Id.*  Economic factors relevant to the

analysis include "the individual's ownership interest, degree of control over the

corporation's financial affairs and compensation practices, and the role in causing

the corporation to compensate or not compensate employees in compliance with

the FLSA." *Rikard*, 2013 WL 5298460 at * 3 (citing *Saunders v. Ace Mortg.*

*Funding, Inc.,* 2007 WL 4165294, at *4 (D.Minn. Nov. 16, 2007); *see also*

*Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 677–78 (1st

Cir.1998)).  "The overwhelming weight of authority is that a corporate officer with

operational control of a corporation's covered enterprise is an employer along with

the corporation, jointly and severally liable under the FLSA for unpaid

wages." *Rikard*, 2013 WL 5298460 at * 3 (citing *Solis v. Hill Country Farms,*

*Inc.,* 808 F.Supp.2d 1105, 1115 (S.D.Iowa 2011)).

Here, Saggar's deposition testimony was that he founded the Urgent Cares,

is one of two trustees of the trust which owns the Urgent Cares, is the managing

member of each of the Urgent Cares, exercises operational and managerial control

over each of the Urgent Cares, and provides direct patient care at the Urgent Cares

as a physician.  Saggar testified that although hiring and firing medical assistants was not his "decision alone," he "had a voice in everything."  He also testified that he had a role on determining the pay rates for medical assistants.  It was also his decision to use a third-party payroll processing company.

As to whether Saggar should be subject to personal liability, Defendants contend that "Saggar did not directly supervise Plaintiffs."  Defendants provide no argument for why this fact would or should absolve Saggar of personal liability. Defendants add, again without context, "Plaintiff Medina even admitted that she never complained to Dr. Saggar about any allegation of improper compensation." In their Statement of Genuine Material Facts Remaining in Dispute, Defendants state that Saggar had no role in keeping, maintaining, or accessing the medical assistants' payroll records and that "Saggar did not have access to payroll records." The former statement is self-serving and ignores the fact that Saggar made the decision to use a payroll management company.  The latter statement misconstrues Saggar's testimony, which is that he never had and never wanted to see the records but is "sure" could have seen the records if he wanted to.

Saggar's undisputed testimony shows, among other things, that he had and exercised control over the operations and management of each of the Urgent Cares. He is an "employer" under the FLSA and is therefore individually liable in this action.

## Conclusion

Based upon the foregoing analysis, Plaintiffs are entitled to judgment as a matter of law.  Defendants have failed to raise any genuine disputes of material fact.  As such, Plaintiffs' Motion for Summary Judgment will be granted.  All pending  pretrial motions will be denied as moot.

Clarification on the issues of Plaintiffs' requested relief and damages is necessary.  Plaintiffs should submit their request for relief to the Court, including proof of damages.  Defendants should respond to these filings.  After consideration thereof, judgment will be entered.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, [Doc. No. 74], is **GRANTED**.

**IT IS FUTHER ORDERED** that Defendants' Motion in Limine [Doc. No. 84], is **DENIED as moot**.

**IT IS FUTHER ORDERED** that Plaintiffs' Motion in Limine [Doc. No. 96], is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit their request for relief to the Court, including proof of damages, within 10 days of this order.

**IT IS FURTHER ORDERED** that Defendants shall respond to Plaintiffs' request for relief and supporting exhibits within 10 days of their submission.

Final judgment to be entered upon determination of damages.

Dated this 24th  day of September, 2019.


_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE