UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TORIA ANDERSON, *et al.*,<br><br>        Plaintiffs,<br>vs.<br><br>CREVE COEUR URGENT CARE LLC, *et al.*,<br><br>        Defendants. | Case No. 4:16-cv-02136<br><br>Judge Henry Edward Autrey |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND**
**COSTS AND MEMORANDUM IN SUPPORT**

COME NOW Plaintiffs Toria Anderson and Wendy Medina, by and through counsel, and pursuant to Federal Rule of Civil Procedure 54 and Local Rules 54 - 8.02-03, hereby submit their Motion for Attorneys' Fees and Costs and Memorandum in Support.

**INTRODUCTION**

What happens when a defendant believes it's judgment proof, refuses to negotiate in good faith, and thumbs its nose at paying even what the Court ordered in summary judgment? The answer unfortunately is this case. The Court should not allow Defendants to play a shell game with its assets and its counsel, and use dilatory and vexatious tactics without consequence. In fact, the Court should order at a minimum for Defendants to even reply to this brief for it to deposit with the Court the amounts it was already Ordered to pay via summary judgment.

Toria Anderson and Wendy Medina are former employees of Defendants Creve Coeur Urgent Care, LLC, Downtown Urgent Care, LLC, North City Urgent Care, LLC, Eureka Clinic LLC, UCSL LLC, doing business as St. Louis Urgent Cares, and Sonny Saggar. Plaintiffs brought this action on December 22, 2016 against the Defendants for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA") and the Missouri Minimum Wage Law ("MMWL").

1

The Complaint was filed on December 22, 2016, but dragged on due to Defendants' delays in responding to discovery and motions, repeated changing of defense counsel, and refusal to act in good faith during settlement talks. During the course of this litigation Defendant busted out the LLC Defendants,[1] negotiated in bad faith, if at all, and repeatedly touted that Defendant Saggar was judgment-proof. Defendants' tactics included, for example, having counsel fly in for a paid mediation in which they offered less money after more costs were incurred by Plaintiff even though Plaintiff's counsel continued to express that in all likelihood Defendant would lose a portion of the case in summary judgment, which eventually occurred. The bad faith was likely based on Defendant Sonny Saggar's belief that has made himself judgment-proof by dissolving the LLC Defendants and shielding his assets in a trust.

On September 24, 2019, the Court granted Plaintiffs' Motion for Summary Judgment, and found that (i) Defendants failed to include Plaintiffs' weekend shift differential pay in their calculation of their overtime rates of pay; (ii) Plaintiffs are entitled to liquidated damages on their FLSA claims; (iii) Defendant Sonny Saggar is an "employer" under the FLSA and is therefore individually liable in this action. [Doc. No. 103] On November 8, 2021, the Court entered a Final Judgment awarding Plaintiffs actual and liquidated damages for their claim that Defendants failed to include weekend shift differential pay in their calculation of their overtime rates of pay and dismissing Plaintiffs' other claims. [Doc. No. 137]

As prevailing parties, Plaintiffs submit the following request for the Court to order Defendants to pay $210,739.50 in attorneys' fees and $14,488.73 in costs pursuant to the FLSA and MMWL.

---

[1] *See* Notices of Winding up and Articles of Termination of Limited Liability Company each of the LLC Defendants filed with the Missouri Secretary State on March 26, 2019, filed as Exhibit 2 to Plaintiffs' Reply to Defendants' Response to Order to Show Cause. [Doc. No. 64-2]

## ARGUMENT

### I. Legal Standard.

The FLSA requires that, in addition to a judgment awarded to a plaintiff in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Similarly, the MMWL directs that employers found in violation of the law "shall be liable…for costs and such reasonable attorney fees." RSMo § 290.527. The starting point for determining the amount of reasonable attorneys' fees is the lodestar amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Thornton v. Mainline Commc'ns, LLC*, 2016 WL 687844, at *1 (E.D. Mo. Feb. 19, 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In an FLSA case, "courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of fees ...'encourage[s] the vindication of congressionally identified policies and rights.'" *Adams v. City of Manchester*, 2013 WL 4776280, at *3 (E.D. Mo. Sept. 6, 2013) (citing *Morales v. Farmland Foods, Inc.*, 2013 WL 1704722, *5 (D. Neb. April 18, 2013).[2] Accordingly, Plaintiffs respectfully submit to the Court their application for attorneys' fees and costs as detailed below.

---

[2] Courts in the Eighth Circuit routinely award attorney fees in excess of the amount recovered by the plaintiff in FLSA actions. *See e.g., Adams*, 2013 WL 4776280 (awarding plaintiffs $100,354.643 in attorneys' fees on a $30,851.42 judgment); *Morales*, 2013 WL 1704722 at *5 & *11 (awarding $2,008,142 in attorneys' fees on a $275,000 settlement and citing cases from throughout the country rejecting the proportional fee approach in FLSA cases); *Pressler v. FTS USA, LLC*, 2011 WL 2182023, at *2 (E.D. Ark. June 2, 2011) (explaining "the fee award [in an FLSA case] need not be proportional to [the] damages.").

II. **Plaintiffs' Total Attorneys' Fees and Costs.**

For the Court's consideration, Plaintiffs attach their counsel's detailed daily time records as **Exhibit 6**. The hours expended by Brown, LLC are broken down, per timekeeper, as follows:

| Name and Initials of Timekeeper | Position | Rate | Hours | Total Billed |
|---|---|---|---|---|
| Jason Brown ("JTB") | Founder of Brown, LLC | $500.00 | 76.6 | $38,150.00 |
| Nicholas Conlon ("NC") | Associate | $300.00 | 529.8 | $158,940.00 |
| Patrick Almonrode ("PA") | Associate | $300.00 | 6.4 | $1,920.00 |
| Ching-Yuan "Tony" Teng ("TT") | Associate | $200.00 | 20.9 | $4,180.00 |
| Irene Chan ("IC") | Associate | $200.00 | 7 | $1,400.00 |
| Bernardo Valdez ("BV") | Administrative Assistant | $100.00 | 12.7 | $1,270.00 |
| Caitlin Keating ("CK") | Administrative Assistant | $100.00 | 2.3 | $230.00 |
| Christy Weser ("CW") | Administrative Assistant | $100.00 | 2.2 | $220.00 |
| Osmara Suazo ("OS") | Administrative Assistant | $100.00 | 14 | $1,400.00 |
| Rebecca Mahabir ("RM") | Administrative Assistant | $100.00 | 14.8 | $1,480.00 |
| Sueherminia Colon ("SC) | Administrative Assistant | $100.00 | 0.3 | $30.00 |
| Vanessa Reyes ("VR") | Administrative Assistant | $100.00 | 0.5 | $50.00 |
| Wascar Guerrero ("WG") | Administrative Assistant | $100.00 | 0.7 | $70.00 |
| | | **TOTAL** | **688.2** | **$209,490.00** |

In addition, local counsel Engelmeyer & Pezzani, LLC has billed $1,249.50 (bringing the total fees incurred to $210,739.50), as reflected in the firm's detailed daily time records as **Exhibit 9**.

Plaintiffs also include detailed records of the litigation costs incurred by their counsel as **Exhibit 7**. Plaintiffs' counsel's litigation costs are broken down as follows:

| Cost Category | Amount |
|---|---|
| Data Processing | $40.61 |

4

| | |
|---|---|
| Depositions | $5,130.67 |
| Filing Fee | $400.00 |
| LexisNexis | $2,349.77 |
| Mediation Fees | $987.50 |
| Miscellaneous | $38.18 |
| PACER | $13.50 |
| Postage | $134.88 |
| Pro Hac Vice Fees | $300.00 |
| Process Server Fee | $54.90 |
| Subpoena for Payroll Records | $150.00 |
| Travel | $4,888.72 |
| TOTAL | $14,488.73 |

These amounts are itemized in greater detail in **Exhibit 7**.

### III. The Total Amount of Time Spent by Plaintiffs' Counsel was Reasonable and Necessary.

Brown, LLC has represented Plaintiffs Anderson and Medina since September 2016, when it thoroughly investigated their claims. *See* **Exhibit 1**, Declaration of Jason T. Brown ("JTB Decl.") ¶ 3. Brown, LLC filed the complaint on Plaintiffs' behalf on December 22, 2016, with the assistance of local counsel Engelmeyer & Pezzani, LLC. *Id.* at ¶ 4.

In addition to investigating, preparing, and filing the complaint, Plaintiffs' counsel was required to perform the following essential tasks throughout the course of the litigation:

- conduct initial interviews of clients and investigate their potential claims;

- research, draft, and edit the complaint;

- analyze Plaintiffs' time and pay records and calculate their damages;

- participate in required Rule 16 meet and confer discussions;

- participate in the exchange of written discovery including reviewing documents produced by Defendants, serving a subpoena on Defendants' former third-party payroll company, and drafting a motion to compel;

- prepare for court-ordered mediation and travel to St. Louis, Missouri to participate in mediation;

- prepare for each side's depositions and travel to St. Louis, Missouri to take and defend depositions;

- confer with Defendants' former counsel regarding their threat to file a frivolous motion for sanctions;

- prepare Plaintiffs' Motion for Default Judgment; [Doc. No. 53]

- prepare Plaintiffs' Motion for Summary Judgment and Amended Motion for Summary Judgment as well as reply briefs in support thereof; [Doc. Nos. 53, 57, 71, 74, 81]

- prepare pre-trial submissions in preparation for the jury trials that were previously scheduled for September 30, 2019 and November 8, 2021, respectively; [Doc. Nos. 82, 88-101, 123-130]

- prepare Plaintiffs' Request for Relief and Entry of Judgment; [Doc. No. 105] and

- prepare Plaintiffs' Motion for Reconsideration of Order Regarding Damages for Non-Off-the-Clock Claims. [Doc. No. 114]

Each of these tasks was necessary to properly prosecute the Plaintiffs' claims. *Id.* at ¶ 18.

However, if Defendants had any interest in negotiating settlement good faith and, this case could and should have been resolved well-prior to undertaking the majority of these tasks, as the complaint includes specific examples of the failure to include weekend shift differential pay in the calculation of overtime rates of pay, supported by documents attached to the complaint

6

and Defendants had the benefit of multiple very experienced counsel who never put forth a credible defense to Plaintiffs' overtime rate claims. [Doc. No. 1, ¶¶ 111-112][3]

Despite receiving the complaint on February 8, 2017, Defendants did not make their first settlement offer until April 10, 2018, when they offered a total of $2,000 inclusive of attorneys' fees and costs, despite considerable work already performed. JTB Decl. ¶ 5.

Evidencing bad faith, after Plaintiffs' counsel flew to St. Louis in for a mandatory in-person mediation on May 1, 2018 Defendants **lowered their offer** from $2,000 to $900. *Id.* at ¶ 6.

Following the mediation, over the course of May – July 2018, Plaintiffs' counsel prepared responses to Defendants' interrogatories[4] and requests for production of documents, produced Plaintiffs' documents, negotiated a protective order, reviewed Defendants' responses to Plaintiffs' interrogatories, requests for production of documents, and requests for admission, reviewed Defendants' document production as well as document received via subpoena, prepared for and defended Wendy Medina and Toria Anderson's depositions (which lasted 9.3 and 7.5 hours, respectively – (in the experience of counsel who focuses on wage and hour cases,

---

[3] Ogletree Deakins Nash Smoak & Stewart PC (Defendants' counsel from May to October 2018, a firm that heavily focuses on defending wage and hour cases, demonstrated their understanding the legal basis for Plaintiffs' overtime rate claims on their web site as early as 2012:

> Ensure Overtime Is Properly Calculated
> The FLSA requires payment for overtime at one-and-one-half times an employee's "regular rate" of pay. This does not necessarily mean merely one-and-one-half times the base hourly rate of pay. Many other forms of compensation may have to be included in the calculation, such as bonuses, incentive payments, etc. Employers very commonly commit errors in this area without knowing it."

*See* https://ogletree.com/insights/flsa-collective-actions-how-your-company-can-avoid-being-targeted/ - .

[4] Defendants' interrogatories were unnecessarily voluminous, resulting in Plaintiffs and their counsel having to spend a substantial sum of time to prepare responses. *See* **Exhibit 2**.

the depositions generally last 3-4 hours for this type of case), and prepared for and took a Fed. R. Civ. P 30(b)(6) deposition as well as depositions of Defendant Sonny Saggar and fact witness Renita Barringer. *Id.* at ¶ 7. Defendants once again were well aware of the evidence that would ultimately lead to summary judgment regarding overtime rate violations, liquidated damages, and Sonny Saggar's individual lability. However, Defendants did not increase their offer of $900 until August 24, 2018, at which point they reinstated their original offer of $2,000 and then followed by sending Plaintiffs a frivolous tactical draft of a motion for sanctions against Plaintiffs and their counsel pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 and threatening to file the motion if their offer was not accepted. By this point, Plaintiffs' counsel had expended 328.5 hours on the case and had incurred significant costs for depositions and travel. *Id.*

In October 2018, after Plaintiff's counsel stared down and called out Defendants' sanctions motion as the frivolous tactic it was, Defendants' former counsel Ogletree Deakins Nash Smoak & Stewart PC and The Cohn Law Firm, LLC both withdrew from the case, after having served as Defendants' counsel of record since May 23, 2018 and April 6 2017, respectively. Defendants proceeded without counsel until April 12, 2019, when Eric Banks began representation. *Id.* at ¶ 8.

Despite the change in counsel, Defendants' refused to ever reinstate let alone increase their $2,000 offer, ***even after*** Plaintiffs prevailed on summary judgment and were awarded a total of $816.14 in damages arising from Defendants' failure to include Plaintiffs' weekend shift differential pay in their calculation of their overtime rates of pay. *Id.* at ¶ 9. On September 29, 2019, after receiving the Court's order granting summary judgment and Plaintiffs' counsel's "Last Chance Email," Mr. Banks replied "I am sorry to report that my Client has not provided me with any authority." *See* **Exhibit 3**. On June 1, 2020, over a month after the Court had

8

granted Plaintiffs' Motion for Reconsideration of Order Regarding Damages for Non-Off-the-Clock Claims, Mr. Banks replied "I am sorry to report that I do not have any authority. ***I have made my client aware of the ramifications of his decision***." *Id*. (emphasis added) Defendants did not raise their offer above $0 again until October 31, 2021, by offering $1,000 inclusive of attorneys' fees and costs. Thus, from September 29, 2019 until October 31, 2021, Defendants did not have any pending settlement offer, despite the fact that the Court had already found them liable for damages which triggered statutorily-mandated fees and costs, both of which far exceeded the offer. JTB Decl. ¶ 9.

From the outset, Defendants have refused to appropriately evaluate their case and make a reasonable settlement offer. Indeed, Defendants could have paid Plaintiffs their back wages before they ever sought legal representation or filed this action, as Plaintiffs Anderson and Medina complained about improper overtime wages to the United States Department of Labor in or around May and June 2016. *See* Defendants' Statement of Genuine Material Facts Remaining in Dispute, ¶¶ 7-8. [Doc No. 79] During Defendants' Rule 30(b)(6) deposition Dr. Sonny Saggar testified that he was aware of these complaints but could not recall any steps he took to investigate or resolve them. *See* Statement of Undisputed Material Facts, Ex. 2, at 93:10 – 95:16.

Accordingly, Plaintiffs should be awarded reasonable fees and costs for the time they were forced to spend due to Defendants' refusal to appropriately evaluate their case.

**IV.   Plaintiffs' Counsel's Hourly Rates are Reasonable.**

In determining the lodestar amount, the Court must determine a reasonable hourly rate for the attorneys. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828-829 (8th Cir. 2002). "[W]hen fixing hourly rates, courts may

draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

Here, most of the lodestar consists of hours billed by attorneys Jason T. Brown and Nicholas Conlon.

Jason T. Brown is the Founder and Head of Brown, LLC and the firm's Senior Litigator. JTB Decl. ¶ 12. He has been practicing law for roughly twenty-five (25) years, since 1996, often handling complex civil ligation such as *qui tam* and class actions with many class and collective actions certified, at times, settled and at other times taken to disposition, including jury trials. *Id.* He has successfully litigated cases nationwide in state and federal proceedings. *Id.* In the past he served as a Legal Advisor and Special Agent for the Federal Bureau of Investigation (FBI) and also as a judicial law clerk to a Superior Court Judge. *Id.* While Mr. Brown typically bills at rates of up to $800 per hour, the rate proposed for him in this matter is $500 per hour, in accordance with customary rates in the metropolitan St. Louis area and the rates approved in other FLSA cases in this jurisdiction. *Id.*

Nicholas Conlon received his Juris Doctor in 2012, has been an Associate for Brown, LLC since 2014, and currently serves as the chair of the firm's wage-and-hour department. JTB Decl. ¶ 13. He has served lead or co-lead counsel in over 100 wage and hour cases in over 30 federal jurisdictions. *Id.* Many of these cases involved mass litigation, either as an FLSA collective action, a Fed. R. Civ. P. 23 class action, or a hybrid of the two. *Id.* While Mr. Conlon typically bills at rates of up to $600 per hour, the rate proposed for him in this matter is $300 per hour, in accordance with customary rates in the metropolitan St. Louis area and the rates approved in other FLSA cases in this jurisdiction. *Id.*

10

In addition, Plaintiffs propose hourly rates of $300 for Associate Patrick Almonrode (who received his Juris Doctor in 2004), $200 for former Associates Ching-Yuan "Tony" Teng (who received his L.L.M. in 2008 and worked for Brown, LLC as a Law Clerk and then as an Associate after obtaining bar admission in 2017) and Irene Chan (who received her Juris Doctor in 2017 and previously served active duty for seven years in the United States Armed Forces), and $100 per hour for Administrative Assistants. JTB Decl. ¶ 14. Finally, local counsel Anthony M. Pezzani, a partner with the firm Engelmeyer & Pezzani, LLC, proposes an hourly rate of $400 per hour. *See* **Exhibit 8**, Affidavit of Anthony M. Pezzani, ¶ 8.

Partner rates of $400 - $500.00 per hour and associate rates of $200.00 – $300.00 per hour are reasonable for Plaintiffs' counsel. *See Sandoval-Osegura v. Harvey Pallets Mgmt. Grp., LLC*, 2021 U.S. Dist. LEXIS 107235, at *6-8 (E.D. Mo. June 8, 2021) (finding in FLSA case that "hourly rates of $500 for partners and $350-400 for associates are reasonable in light of prevailing rates in the community); *Drake v. Steak N Shake Operations, Inc*., 2019 U.S. Dist. LEXIS 79287, at *7-9 (E.D. Mo. May 10, 2019) (approving rates of $500 and $475 per hour in FLSA action).

In addition, an analysis of rates by Missouri Lawyers Weekly of the relevant market shows that in 2018 and 2019, the attorney range rates for partners in the St. Louis market was between $160 and $865, with $390 per hour as the median. *See* **Exhibit 5**. The attorney range rates for associates in the St. Louis market was between $185 and $565, with $298 per hour as the median. In this matter, the requested rates are below the comparable median rates for the St. Louis market. *Id.* This is further confirmed by the Affidavit of Daniel J. McMichael, an experienced St. Louis-based attorney, who has reviewed this motion and exhibits and has opined that the rates sought by Plaintiffs' counsel are reasonable. *See* **Exhibit 10**.

11

## V. Additional Factors

To determine the fee, courts also consider: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys' (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Starks v. Harris Co. Inc.*, 2014 WL 1314945, at *2 (E.D. Mo. Mar. 26, 2014).

### (1) Time and Labor Required

Plaintiffs' counsel invested a substantial amount of time and resources in this action and took a significant risk of failing to recover due to certain legal obstacles in this case. A review of the lodestar calculation above demonstrates the reasonableness of the fee request.

### (2) The Novelty and Difficult of the Questions Involved, (3) the Requisite Skill and Experience, (9) Reputation and Ability of the Attorneys

"FLSA claims typically involve complex mixed questions of fact and law – e.g., what constitutes the 'regular rate,' the 'workweek,' or 'principal' rather than 'preliminary or 'postliminary' activities. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rules." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 743 (1981).

Here, Plaintiffs' counsel is experienced in this area of the law and has gained particularized skills necessary to effectively prosecute these actions. JTB Decl. ¶ 19. Plaintiffs' counsel has significant experience in handling wage and hour employment actions, has been

12

appointed class counsel in numerous wage and hour class actions, and has been involved in numerous settlements for the benefit of individuals and class members. *Id.* Further, the overtime rate claims posed a unique difficulty in this matter because Plaintiffs' pay was often split into separate paystubs issued from the various LLC Defendants, with hours paid at different rates in some cases, as well as instances in which weekend shift differentials were not separately itemized on the paystubs and thus had to be cross-checked against Plaintiffs' time sheets. *Id.*

**(4) Preclusion of Other Employment, and (6) Contingent Fee**

Plaintiffs' counsel has expended over 688 hours to date, including multiple trips to St. Louis, Missouri for mediation, depositions, and a status conference. As a result, Plaintiffs' counsel was precluded from using the time for other matters.

Further, Plaintiffs' counsel undertook this matter on a contingency basis, while incurring all expenses and costs in this matter, and assuming all risk in this matter. JTB Decl. ¶ 20. Plaintiffs' counsel faced a very real possibility of ultimately obtaining no attorney fees or recovery of costs expended, given that the LLC Defendants dissolved during the pendency of this action [Doc. No. 64-2] and Defendant Sonny Saggar has represented that he is judgment-proof because his assets are shielded by a trust account. JTB Decl. ¶ 20.

**(5) Customary Fee for Similar Work and (12) Awards in Similar Cases**

In similar cases, this Court routinely awards fees based upon a lodestar calculation analysis. *See Thornton*, 2016 WL 687844. *Van Booven v. PNK (River City), LLC*, 2015 WL 3774043 (E.D. Mo. June 17, 2015); *Risch v. Natoli Engineering Co.*, LLC, 2012 WL 4357953, at *4 (E.D. Mo. Sept. 24, 2012).

13

**(7)     Time Limitations and (11) Nature and Length of the Professional Relationship**

Plaintiffs' counsel faced considerable time limitations in investigating and filing this action, as Plaintiffs' employment with Defendants had already ended when they retained counsel, and they had worked for Defendants dating back to before the relevant statute of limitations (3 years under the FLSA and 2 years under the MMWL). Plaintiffs' counsel worked diligently to analyze the payroll records Plaintiffs provided to confirm the merit of their claims. Since beginning its representation in September 2016, Plaintiffs' counsel has represented the Plaintiffs for over five years and has spend ample time interacting with them to address their questions and concerns and guide them through the various phases of the litigation.

**(8)     Results Obtained**

A favorable result for the plaintiff is a "crucial factor" to consider when awarding attorney's fees. *See Wamsley v. Kemp Creditors Interchange Receivables Management, LLC*, 2010 WL 1610734, at *2 (S.D. Ohio April 20, 2010). Here, Plaintiffs' counsel assisted the Plaintiffs in prevailing on summary judgment and obtaining a judgment for $816.14 in damages arising from Defendants' failure to include Plaintiffs' weekend shift differential pay in their calculation of their overtime pay. This figure represents 100% of the damages Plaintiffs were entitled to for this claim, based on their payroll records, and includes a full set of liquidated damages. Although this figure is low in comparison to the requested fees, Defendants maintained throughout the case that Plaintiffs were not entitled to any damages for this claim and negotiated accordingly. Thus, in order to achieve this figures, Plaintiffs had to perform a copious analysis of Plaintiffs' time and pay records, which was complicated by the fact that Plaintiffs received paystubs from multiple Defendants in many weeks. Plaintiffs' counsel also filed a Motion for Reconsideration [Doc. No. 114] that resulted in the Court adjusting Plaintiffs' damage award

14

from $98.88 to $816.14. Finally, Plaintiffs obtained a favorable ruling on individual liability against Defendant Sonny Saggar, which, given the dissolution of the LLC Defendants, greatly increases their changes of collecting on the Court's judgment.

## VI. Plaintiffs' Counsel Should be Awarded their Costs

Plaintiffs also seek the recovery of costs incurred in this matter.  In FLSA cases, costs are not limited to the categories set forth in § 1920 for prevailing parties. *Thornton*, 2016 WL 687844.  Any costs not allowed as taxable costs under § 1920 may be allowed as part of attorney's fees, or nontaxable costs, where there is other statutory authorization. *See Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008).

Here, Plaintiffs' counsel requests reimbursement for $14,488.73 in costs. This includes a filing fee, process server fee, deposition costs, copying and postage costs, and travel expenses. *See* **Exhibit 7**. These costs are reasonable and were necessary in order to effectively prosecute Plaintiffs' claims. Plaintiffs respectfully request that Plaintiffs' counsel be reimbursed for such reasonable costs incurred.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court award Plaintiffs attorneys' fees in the amount of $210,739.50 and costs in the amount of $14,488.73, for a total amount of $225,228.23.
.

                                                RESPECTFULLY SUBMITTED,

Dated: November 29, 2021                By:    /s Jason T. Brown
                                                              Jason T. Brown
                                                               Nicholas Conlon
                                                               Brown, LLC
                                                               111 Town Square Place, Suite 400

Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Lead Counsel for Plaintiffs*

Anthony M. Pezzani
Engelmeyer & Pezzani, LLC
13321 N. Outer Forty Road, Suite 300
Chesterfield, MO 63017
(636) 532-9933 Phone
(314) 863-7793 Facsimile
tony@epfirm.com

*Local Counsel for Plaintiffs*